UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINETTE GIBSON,                          Case No. 1:03-CV-53
Personal Representative of
the Estate of OZY VAUGHN,
Deceased,                                   HON. RICHARD ALAN ENSLEN

                    Plaintiff,

v.

JILL BLANKSTROM, *et al.*,

                    Defendants.            **OPINION**
_____/

        This matter is before the Court on Defendants David Moskowitz, Lawrence Cieply, James Buss,

Tony Croll, Susan Smith, Michelle Slocum-Taylor, Jack VanBeelen, Karl Weathers, Terry Morris, Paul

Foster, Charles House, Randy Parker, Craig Stevens, Jill Blankstrom, Steven Meno, Kathy Mutschler,

Carmella Mangiapani, Diane Conley and Debra Mills' 56(b) Motions for Summary Judgment.[1]  In six

Motions for Summary Judgment, Defendants request the Court grant summary judgment in favor of

each Defendant as to Plaintiff Antoinette Gibson's 42 U.S.C. § 1983 and Eighth Amendment claims.

Defendants also request the Court grant summary judgment in favor of each Defendant asserting that

each Defendant is entitled to qualified immunity.  Defendants further request summary judgment in

favor of each Defendant as to Plaintiff's state claims of gross negligence and intentional infliction of

emotional distress.  (Third Am. Compl. at 12.)  Defendants Moskowitz, Cieply, Croll, Stevens,

_____

        [1]The names of some Defendants have been spelled various ways throughout the pleadings.
The Court will spell Defendants' names as they appear in their respective Motions for Summary
Judgment.

Blankstrom, Meno, Mutschler, Mangiapani, Conley and Mills request summary judgment as to Plaintiff's state law claim of medical malpractice and/or professional negligence.  For the reasons which follow, Defendants House and Blankstrom are entitled to summary judgment as to Counts I and II of the Third Amended Complaint.  Otherwise, the Motions will be denied.

## I.     Facts

The following statement of facts is a representation of the factual record interpreted in a light most favorable to Plaintiff, who is the non-moving party in this matter.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Before his death on January 29, 2002, Ozy Vaughn was an inmate at Riverside Correctional Facility ("Riverside") in Ionia, Michigan.  (Pl.'s Resp., Ex. A, Autopsy Report at 1.)  Defendants were all employees of the Michigan Department of Corrections ("MDOC") and at the time of Vaughn's death were employed at Riverside.[2]

Vaughn's records indicate that his schizophrenia was controlled by an antipsychotic medication, Seroquel, until January 2002, when he stopped taking it.  (MDOC Progress Notes, Dkt. No. 225, Ex. 2 at 1.)  Vaughn was then placed on a different medication, Risperdal, which he stopped taking later in January.  (*Id.* at 2; Pl.'s Ex. Z at 5.)

On Friday, January 25, 2002, Vaughn was housed in a dorm cell and began to exhibit unusual behavior.  Namely, Vaughn was standing naked in his cell and praying over his paraplegic bunkmate.  (MDOC Progress Notes, Jan. 25, 2002, Pl.'s Ex. Y at 1.)  Due to this behavior, Vaughn was placed in

---

[2]At the time of Vaughn's death, certain Defendants were working at Riverside as a result of a contract between MDOC and Michigan Department of Community Health.  Under *West v. Akins*, 487 U.S. 42 (1988), the Court addresses all Defendants as employees of MDOC and Riverside and, as such, were acting under the color of state law for the purpose of 42 U.S.C. § 1983.

an observation cell that same day in "10 building." (Nurses Log, Dkt. No. 227, Ex. 5; *see also* Incident Report, Feb. 21, 2002 at 5,7-8.)  On the same day, Vaughn was also placed on Hadol, a different antipsychotic medication by Defendant Doctor Moskowitz.  (*Id.* at 10-11.)

Vaughn remained in 10 building over the weekend of January 25, 26 and 27, 2002.  Vaughn's observation room was warm and Vaughn was observed sweating profusely, having dry lips, and speaking gibberish.  (Incident Report, Sept. 29, 2002 Supp. at 5.)  Vaughn was also seen either dry heaving or vomiting.  (Incident Report, Feb. 21, 2002 Supp. at 1-4.)  Vaughn was observed to be lethargic, unresponsive and confused.  (VanBeelen Dep. at 53-57.)

Vaughn was moved to 11 building at 4:30 p.m. on January 28, 2002.  (Incident Report, Mar. 27, 2002 Supp. at 3.)   Vaughn was found deceased in his cell at 7:00 a.m. on January 29, 2002. (Autopsy Report at 2.)

On January 17, 2003, Plaintiff Antoinette Gibson, as the Personal Representative of the Estate of Vaughn, filed a Complaint against Blankstrom, Buss, Cieply, Conley, Croll, Mangiapani, Meno, Mills, Morris, Moskowitz, Mutschler, Pohl, Slocum-Taylor, Smith, Stevens, Sullivan, VanBeelen and Weathers. (Dkt. No. 1.)  After several Defendants moved for a more definite statement, Plaintiff filed a First Amended Complaint on June 13, 2003, suing Defendants in their individual capacities.  (Dkt. No. 61.)  After Plaintiff submitted "Notice of Intent to File a Claim Alleging Medical Malpractice" on October 13, 2003, she filed a Second Amended Complaint adding claims of medical malpractice against Defendants Moskowitz, Cieply, Croll, Blankstrom, Conley, Meno, Mills, Mutschler, Stevens and Mangiapani on April 9, 2004.  (Notice, Blankstrom Br., Ex. 10; Second Am. Compl., Dkt. No. 129.)  On December 2, 2004, Plaintiff filed a Third Amended Complaint adding Defendants House, Mathis, Foster, Hauk and Parker in their individual capacities.  (Dkt. No. 182.)

Plaintiff's battery claims were dismissed by the parties' stipulation and Court Order dated April 15, 2005.  (Dkt. No. 231.)  Plaintiff's claims against Defendants Sullivan, Pohl, Mathis, Hauk, Mutschler and Meno were dismissed without prejudice by parties' stipulation and this Court's Order. (Dkt. Nos. 205-06, 232-35.)  The remaining Defendants now move for summary judgment.[3]

By parties' stipulation and this Court's Order, Defendant Terry Morris was dismissed without prejudice on February 23, 2004.  (Dkt. No. 123.)  Plaintiff's Second Amended Complaint, filed on April 9, 2004, and Third Amended Complaint, filed on December 9, 2004, both name Terry Morris in his individual capacity.  However, claims against Defendant Morris were not addressed by his Motion or Plaintiff's Response.  (Br., Dkt. No. 221 at 1 n.1; Dkt. No. 247.)  Therefore, the Court will not address the question of whether Defendant Morris is entitled to summary judgment and deny Defendant Morris' Motion without prejudice.

## II.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact.  The party moving for summary judgment bears the initial burden of specifying the basis on which summary judgment should be granted and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Once this initial burden is met, the non-moving party has the burden of presenting specific facts, supported by the record, showing a genuine issue of material fact.

---

[3]Since filing their Motions for Summary Judgment, Defendants Steven Meno and Kathy Mutschler have been dismissed and as such, their Motions are moot and will be denied.

4

*Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

## III.   Analysis

### A. Count I:  § 1983 Claims

#### I.  Deliberate Indifference

Plaintiff brings her claim under 42 U.S.C. § 1983, alleging a violation of the Eighth Amendment of the United States Constitution.  Title 42 U.S.C. § 1983 prohibits any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any United States citizen "of any rights, privileges, or immunities secured by the Constitution and laws."  The Eighth Amendment of the Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*."  (emphasis added).  A prisoner must show that "prison officials acted with 'deliberate indifference' towards conditions at the prison that created a substantial risk of harm" to prove a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  This test encompasses both an objective and a subjective component.  The objective component requires the prisoner to show that the deprivation was "sufficiently serious."  *Id.*  The subjective component requires the prisoner to show that "prison officials had 'a sufficiently culpable state of mind.'"  *Id.*  "In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Id.*

A prison official acts with deliberate indifference to a substantial risk of serious harm when she or he knows of and "recklessly disregards" that risk. *Farmer*, 511 U.S. at 837. The test of deliberate indifference is subjective rather than objective. *Id.* at 840-41. Additionally, "the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). An "official's failure to alleviate a significant risk that he *should have* perceived but did not, while not cause for commendation, cannot...be condemned as infliction of punishment." *Farmer*, 511 U.S. at 838. Also, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844; *see also Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir. 2003). At the same time, "prison officials may be held liable for failure to remedy a risk of harm so obvious and substantial that the prison officials must have known about it." *Id. at* 858. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn*, 22 F.3d at 660. However, an official may be found to have acted with deliberate indifference even if there is no evidence that he acted with a conscious intent to inflict pain. *Id.* A prison guard acts with deliberate indifference when he denies or delays a prisoner's access to medical care as to a serious medical need. *See Farmer*, 511 U.S. at 832-33, 835; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Scicluna v. Wells,* 345 F.3d 441, 447 (6th Cir. 2003). Therefore, "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Boretti v. Wiscomb,* 930 F.2d 1150, 1154-55 (6th Cir. 1991). *See also Johnson v. Busby*, 953 F.2d 349 (8th Cir. 1991).

In this case, Plaintiff alleges Defendants acted with deliberate indifference by depriving Vaughn of water and medical care.  In light of the death that occurred, and for the purposes of these Motions, the Court will assume that Plaintiff has established the objective component of her Eighth Amendment claim by showing that the deprivation was sufficiently serious.  *See, e.g., Joseph ex rel Estate of Harbin v. City of Detroit*,  289 F. Supp. 2d 863 (E.D. Mich. 2003); *Johnson v. Wright*, 412 F.2d 398 (2nd Cir. 2005).  Therefore, the primary issue is the subjective component, and Plaintiff will be allowed to proceed with her claims against those Defendants who were subjectively aware of and deliberately indifferent to Vaughn's condition, as discussed below.

### ii. Qualified Immunity

A finding of deliberate indifference is only half the inquiry, however, because a defendant who acts with deliberate indifference may nonetheless be protected by the doctrine of qualified immunity. Qualified immunity protects government officials to the extent that their conduct does "not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established constitutional right is one for which "a reasonable official would understand that what he was doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Violations include not only actions that have been previously found to be unlawful but also actions which are apparently unlawful under preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).  Under *Saucier* and the most recent Sixth Circuit Court of Appeals decision addressing this question, *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2005), the Court must apply a two-part test when determining whether qualified immunity applies.[4]  To rule upon the issue of qualified immunity, the court must first

---

[4]The Court recognizes that there is a split in the Sixth Circuit as to whether to apply the two-part test in *Saucier* or the three step analysis set forth in *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). *See Dunigan*, 390 F.3d at 491, n.2.  This Court will follow *Saucier* and *Dunigan*

determine, taking the facts "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *Dunigan*, 390 F.3d at 491. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. If a constitutional violation could be supported by the parties submissions, the second step is to "ask whether the right was clearly established...in the specific context of the case, not as a broad general proposition." *Id.*; *see also Dunigan*, 390 F.3d at 492. "In other words, where a constitutional violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the action *in view of the circumstances the officer confronted assessed in light of 'clearly established' legal rules.*" *Dunigan*, 390 F.3d at 491 (citing *Saucier*, 533 U.S. at 202; *Anderson*, 483 U.S. at 639.)

Defendants argue that they are entitled to qualified immunity because their actions did not violate a clearly established constitutional right. Whether a clearly established constitutional right has been violated is a question of law. *Turner v. Scott,* 119 F.3d 425, 428 (6th Cir. 1997). The Court finds that depriving a prisoner of water or medical care violates a clearly established constitutional right and that, as a result, those Defendants who allowed Vaughn to be deprived of water or medical care are not entitled to qualified immunity. *See Farmer*, 511 U.S. at 832-33, 835; *Estelle*, 429 U.S. at 103-04; *Scicluna,* 345 F.3d at 447. Under *Dunigan* and *Saucier*, the question becomes which officials deprived Vaughn of water or medical care and the "objective legal reasonableness" of the actions of these officials considering the circumstances and assessed in light of clearly established legal rules. *Dunigan*, 390 F.3d at 491. However, a "court should not grant summary judgment on the issue of

---

and apply the two-part test set forth in *Saucier*. However, the Court notes that the analysis under *Williams'* three step analysis, in this case, would reach the same result.

qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Flint ex rel. Flint v. Kentucky Dept. of Corrs.*, 270 F.3d 340, 346 (6th Cir. 2001) (citing *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988)).

### iii.  Application of Law to Individual Defendants

#### a.  Defendant Moskowitz

Defendant Moskowitz is a practicing psychiatrist, licensed by the state of Michigan. (Moskowitz Dep. at 29.)  He is employed by Michigan Health and Care, Inc. ("MHC").  *Id.* at 7, 9. In January 2002, Defendant Moskowitz was assigned to work at Riverside through a contract between MHC and Michigan Department of Community Health ("MDCH").  (Moskowitz Resp., Ex. 3.)  As such, he was acting under the color of state law for the purposes of 42 U.S.C. § 1983.  *West*, 487 U.S. at 42.  Since Vaughn was placed in building 10, Defendant Moskowitz was assigned to Vaughn. (Blankstrom Dep. at 14.)  Defendant Moskowitz prescribed medication to Vaughn without ever seeing him.  (Mich. Dep't of State Police Incident Report, Pl.'s Ex. BB, Feb. 21, 2002 Supp. at 11) (hereinafter, "Incident Report.").  Furthermore, on Monday, January 28, 2002, Defendant Moskowitz observed Vaughn sweating and mumbling, but did not examine Vaughn.  *Id.*  Defendant Moskowitz was informed by Defendant Nurse Blankstrom that she felt it was necessary to move Vaughn to a cooler cell.  *Id.*  Defendant Moskowitz also received a call from Defendant Cieply who stated that he wanted to take Vaughn to the hospital because Vaughn's condition was not improving.  *Id.*  Defendant Moskowitz never followed up on either request or personally checked on Vaughn.  Since he prescribed mediation without examining Vaughn, observed Vaughn's behavior, was informed that Vaughn's

9

condition was not improving and failed to summon medical assistance, Defendant Moskowitz may have acted with deliberate indifference to the medical needs of Vaughn.

The next question is whether Defendant Moskowitz is entitled to qualified immunity. The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right. Defendant Moskowitz is not entitled to summary judgment in light of the above record.

### b.  Lawrence Cieply

Defendant Cieply is a licensed psychologist and was the case monitor for Vaughn since January 2001.  (Incident Report, Mar. 27, 2002 Supp. at 8-9.)  The Incident Report indicates that Defendant Cieply stated he did not see Vaughn when he was asked to by the nurses. *Id.* at 9.  It further indicates that as a case coordinator, it was his responsibility to have Vaughn be seen by a doctor. *Id.* Additionally, the Incident Report indicates that although Defendant Cieply began to complete an Emergent Care referral for Vaughn, he left prior to completing the form. *Id.* Defendant Stevens completed the form began by Defendant Cieply and left it on the desk of Dr. Kathy Mutschler, who Defendant Stevens knew had already left for the day on January 28, 2002. (*Id.* at 66, 70-72.)  Vaughn died in the early morning hours of January 29, 2002.  Therefore, Defendant Cieply may have been deliberately indifferent to Vaughn's medical needs and is not entitled to summary judgment.

The next question is whether Defendant Cieply is entitled to qualified immunity. The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right. Defendant Cieply is not entitled to summary judgment in light of the above record.

### c.  James Buss

On January 28, 2002, Defendant Buss was a sergeant at Riverside and supervised housing units 8, 9, 10 and 11.  (Def.'s Br., Dkt. No. 221 at 2.)  Defendant Buss worked over the weekend and was in close observation of the 10 building.  (Incident Report, Apr. 29, 2002 Supp. at 5.)  Defendant Buss was aware that Vaughn's observation room in the 10 building was "very warm," that Vaughn was sweating profusely and that his lips were dry.  *Id.*  Defendant Buss also participated in moving Vaughn from building 10 to building 11 and stated that Vaughn was talking gibberish.  *Id.*  Defendant Buss recalled giving Vaughn two glasses of water on the day that Vaughn was moved to the 11 building. *Id.* However, Defendant Buss cannot remember how many times Vaughn was let out of his cell to obtain water and use the bathroom.  *Id.*  Since, Defendant Buss was aware that Vaughn was exhibiting signs of dehydration (*e.g.*, dry lips, profuse sweating), and did not ensure that Vaughn received medical treatment, Defendant Buss may have been deliberately indifferent to the medical needs of Vaughn.

The next question is whether Defendant Buss is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Buss is not entitled to summary judgment in light of the above record.

### d.  Tony Croll

Defendant Croll worked as a nurse at Riverside at the time of Vaughn's death.  Around noon on January 28, 2002, Defendant Blankstrom called Defendant Croll and informed Defendant Croll of her concerns regarding Vaughn's condition and the high temperature of Vaughn's cell.  (Incident Report, Mar. 27, 2002 Supp. at 7; Blankstrom Dep. at 52.)  Defendant Croll thought that it was either a side effect of Vaughn's new medication Hadol or heat exhaustion.  (Croll Dep. at 53-54.)  Defendant Croll looked up possible side effects of Hadol and informed Defendant Blankstrom that Vaughn was

probably just experiencing side effects from the Hadol. (Blankstrom Dep. at 52.) Defendant Croll also requested Defendant Blankstrom move Vaughn to a cooler cell, increase fluids, and notify him of any changes. (*Id.* at 52, 94.) However, Defendant Croll never heard back from Defendant Blankstrom and never examined Vaughn or assessed Vaughn's status as he may have been requested to by Defendant Nurse Blankstrom. (*See* Croll Dep. at 137; Blankstrom Dep. at 52-53; Incident Report, Apr. 3, 2002 Supp. at 1-2.) Since, Defendant Croll was aware that Vaughn was exhibiting signs of heat exhaustion and that he was in physical distress and did not examine Vaughn or ensure that Vaughn received medical treatment, Defendant Croll may have been deliberately indifferent to the medical needs of Vaughn.

The next question is whether Defendant Croll is entitled to qualified immunity. The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right. Defendant Croll is not entitled to summary judgment in light of the above record.

### e. Michelle Slocum-Taylor and Susan Smith

Defendants Slocum-Taylor and Smith were working as corrections officers in the 11 building from 10:00 p.m. on January 28, 2002 until 6:00 a.m. on January 29, 2002. They performed checks on Vaughn every fifteen to thirty minutes during their shift. (Incident Report, Feb. 21, 2002 Supp. at 3-4.) They both witnessed Vaughn dry heaving or vomiting at the beginning of their shift. (*Id.* at 1-3.) Defendant Smith left early at 5:25 a.m. and Defendant Slocum-Taylor finished rounds by herself. (*Id.* at 3.) Defendants Slocum-Taylor and Smith were aware of the heating problems with the cell, that Vaughn had been either dry heaving or vomiting and that Vaughn was unresponsive to direct questions. (*Id.* at 1-4.) Therefore, Defendants Slocum-Taylor and Smith may have been deliberately indifferent to the medical needs of Vaughn by not ensuring he received medical care.

12

The next question is whether Defendants Slocum-Taylor and Smith are entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendants Slocum-Taylor and Smith are not entitled to summary judgment in light of the above record.

### f.  Jack VanBeelen

Defendant VanBeelen was a correctional officer in 11 building on January 28, 2002.  (Incident Report, Mar. 27, 2002 Supp. at 4-5.)  Defendant VanBeelen was aware of and concerned about Vaughn's health because he was unresponsive, lethargic and confused.  (VanBeelen Dep. at 53-57.) Defendant VanBeelen contacted Defendant Nurse Mills and requested that she examine Vaughn.  (*Id.* at 56, 80.)  Defendant VanBeelen testified that Defendant Mills, as the observation nurse for the floor, would be the person to contact medical.  (*Id.* at 43.)  Defendant VanBeelen testified that during the middle of his shift, Defendant Mills told him that she had contacted healthcare.  (*Id.* at 65.)  However, Defendant Mills testified that if there was an emergency medical problem, the correctional officers would contact the MDOC medical staff.  (Mills Dep. at 19, 45.)  Since it may have been Defendant VanBeelen's responsibility to contact MDOC medical and he did not do so, he may have been deliberately indifferent to Vaughn's medical needs.

The next question is whether Defendant VanBeelen is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant VanBeelen is not entitled to summary judgment in light of the above record.

### g. Karl Weathers

Defendant Weathers was a correctional officer in 11 building on January 28, 2002.  (Incident Report, Mar. 27, 2002 Supp. at 4-5.)  Defendant Weathers testified that he checked on Vaughn four times during his eight-hour shift, not including accompanying Defendant Mills to give Vaughn his medication.  (Weathers Dep. at 20.)  Defendant Weathers also testified that Vaughn "looked normal to [him]."  (*Id.* at 30.)  However, Defendant VanBeelen, who was working at the same time as Defendant Weathers, was concerned for Vaughn's health to the extent that he repeatedly contacted the nurse in an attempt to obtain assistance for Vaughn.  *Supra.*  For those reasons, Defendant Weathers may have been deliberately indifferent to the medical needs of Vaughn.  *See Farmer*, 511 U.S. at 858.

The next question is whether Defendant Weathers is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Weathers is not entitled to summary judgment in light of the above record.

### h.  Paul Foster

Defendant Foster was a resident unit officer in 10 building and worked on Monday while Vaughn was in the observation room.  (Foster Dep. at 20-21.)  Defendant Foster observed Vaughn vomit, and that he was sweating and "acting bizarre."  (*Id.* at 22, 32.)  Defendant Foster also observed Vaughn drink water from the sink in the bathroom and then vomit.  (*Id*. at 26.)  Defendant Foster then contacted Defendant Nurse Blankstrom.  *Id.*  However, when Defendant Foster left, he knew that Vaughn had not been evaluated.  (*Id.* at 30-31.)  Since, Defendant Foster did not ensure that Vaughn received medical care, he may have been deliberately indifferent to the medical needs of Vaughn.

The next question is whether Defendant Foster is entitled to qualified immunity. The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right. Defendant Foster is not entitled to summary judgment in light of the above record.

### i.  Charles House

Defendant House was the last resident unit officer observing Vaughn in 10 building before his transfer to 11 building. (House Dep. at 6-7, 26.)  As a RUO, Defendant House would sometimes have to address the medical concerns of an inmate and either get them treatment or to a place where the inmate could receive treatment. (*Id.* at 10.)  Defendant House testified that he was concerned for Vaughn's safety and staff safety and contacted his sergeant, Defendant Buss, over the weekend in an attempt to get Vaughn assistance and moved to another cell. (*Id.* at 39-40.)  Defendant House also contacted Defendant Cieply on Friday, Lieutenant Brewer on Saturday, the duty Deputy RUM Varnett on Sunday, and Assistant Resident Supervisor Sutherland on Monday. (*Id.*; *see also* Buss Dep. at 59-60.)

Defendant House made continued and repeated attempts over the course of the weekend to contact people and obtain assistance for Vaughn. The record indicates that Defendant House's actions demonstrate he was not deliberately indifferent to the medical needs of Vaughn. Therefore, summary judgment shall be granted in favor of Defendant House as to Count I of Plaintiff's Third Amended Complaint.

### j.  Randy Parker

Defendant Parker was the sergeant on the midnight shift on January 28,2002. (Smith Dep. at 47-49.)  Defendant Smith testified that she informed Defendant Parker that Vaughn had vomited. (*Id.*

at 49.)  Defendant Parker testified that he does not remember the conversation with Defendant Smith. (Parker Dep. at 33-34.)  However, if Defendant Parker knew of Vaughn's condition and did not ensure that Vaughn received medical attention, he may have been deliberately indifferent to Vaughn's medical needs and is not entitled to summary judgment.

The next question is whether Defendant Parker is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Parker is not entitled to summary judgment in light of the above record.

### k.  Craig Stevens

At all relevant times, Defendant Stevens was employed by the Department of Community Health and held the position of unit chief for the first floor of the 10 building at Riverside.  (Stevens Dep. at 8.)  Defendant Stevens saw Vaughn on January 25 and 28, 2002, for about ten to fifteen minutes each time.  (*Id*. at 47.)  Defendant Stevens knew that Vaughn's cell in 10 building was "overly warm," was told by Defendant Blankstrom that Vaughn's vital signs were irregular and that he had vomited.  (*Id.* at 50-53.)  Defendant Stevens knew that Vaughn has been in observation for four days, was not showing signs of improvement, and a transfer form needed to be completed to transfer Vaughn to the psychiatric hospital.  (*Id.* at 60-62, 66-67.)  Defendant Cieply began to complete the transfer form, Defendant Stevens finished completing the form and left it on the desk of Dr. Kathy Mutschler, who Defendant Stevens knew had already left for the day on January 28, 2002.  (*Id.* at 66, 70-72.)  Vaughn died in the early morning hours of January 29, 2002.  Therefore, Defendant Stevens may have been deliberately indifferent to Vaughn's medical needs and is not entitled to summary judgment.

The next question is whether Defendant Stevens is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established

constitutional right.  Defendant Stevens is not entitled to summary judgment in light of the above record.

### l.  Jill Blankstrom

Defendant Blankstrom worked as a psychiatric nurse during the 6:30 a.m. to 3:00 p.m. shift on January 24 and 28, 2002, as a member of Vaughn's treatment team.  (Blankstrom Dep. at 18, 87-89.) Approximately at 12:30 p.m. on January 28, Defendant Blankstrom was informed by Defendant Foster that Vaughn had drank a large amount of water in the bathroom and vomited.  (*Id.* at 50, 111.)  She observed that Vaughn's gait had become unsteady and that he was pale and sweating.  (*Id.* at 111; Incident Report, Feb. 21, 2002 Supp. at 9.)  Defendant Blankstrom then checked Vaughn's vital signs. She became concerned that Vaughn was dehydrated and, therefore, gave Vaughn two glasses of water and watched him drink one.  (Blankstrom Dep. at 50-52, 80-81, 162-64.)  Defendant Blankstrom then contacted Defendant Croll and informed him of Vaughn's status.  (*Id.* at 51-52, 77.)  Defendant Croll testified that he does not recall Defendant Blankstrom giving him Vaughn's vital statistics or requesting him to come and personally evaluate Vaughn.  (Croll Dep. at 95, 100-01.)  Unsatisfied with Defendant Croll's assessment that Vaughn was merely having a reaction to the new medication, Defendant Blankstrom met with most of Vaughn's treatment team.  (Incident Report, Mar. 27, 2002 Supp. at 6-7; Blankstrom Dep. at 52-55, 56-57.)  Defendant Blankstrom "was literally scared for [] Vaughn's life" and "ple[d] for medical intervention."  (Pl.'s Resp., Dkt. No. 246 at 8 (citing Blankstrom's Dep. at 58-59, 67-68).)

Defendant Blankstrom continued to contact people in an attempt to have Vaughn moved to a cooler room.  (Incident Report, Mar. 27, 2002 Supp. at 3.)  Defendant Blankstrom left around 2:30 p.m.

after communicating the situation to Defendant Nurse Conley.  (*Id.* at 7.)  Vaughn was moved to a cooler cell in 11 building at 4:30 p.m. on January 28, 2002.  *Id.*

Although Defendant Blankstrom did leave before Vaughn was moved to 11 building, her repeated and on-going efforts to assist Vaughn demonstrate that there is not a genuine issue of material fact as to whether she was deliberately indifferent to Vaughn's medical needs.  Defendant Blankstrom's actions, shown in her testimony, the testimony of others, the Incident Report, and the logs kept on January 28, 2002, demonstrate she was not deliberately indifferent to the medical needs of Vaughn. Therefore, summary judgment shall be granted in favor of Defendant Blankstrom as to Count I of Plaintiff's Third Amended Complaint.

### m.  Carmella Mangiapani

Defendant Mangiapani worked January 25, 26 and 27, 2002.  (Mangiapani Dep. at 37.)  When she arrived at Riverside on January 25, 2002, she was informed that Vaughn had been awake all the previous night naked and praying and that Vaughn's cell mate was "terrified."  (Incident Report, Mar. 27, 2002, Supp. at 2.)  Vaughn was transferred to the observation room that morning and Defendant Mangiapani knew the measured temperature in Vaughn's cell in 10 building to be around 100 degrees Fahrenheit.  (*Id.* at 3.)  Defendant Mangiapani knew of Defendant Blankstrom's efforts to contact Defendants Moskowitz, Croll and Cieply.  *Id.*  The Incident Report indicates that Defendant Mangiapani may have known that Vaughn had a "widening pulse pressure."  *Id.*  Defendant Mangiapani explained that a widening pulse pressure "could indicate cardiac problems, fluid imbalance or neurological problems."  *Id.*  Therefore, Defendant Mangiapani may have been deliberately indifferent to the medical needs of Vaughn by not ensuring that he received medical care.

The next question is whether Defendant Mangiapani is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Mangiapani is not entitled to summary judgment in light of the above record.

### n.  Diane Conley

Defendant Nurse Conley worked the afternoon shift on January 26, 27 and 28, 2002.  (Conley Dep. at 22.)  Defendant Conley assisted Vaughn with filling cups with water at the drinking fountain and saw him drink the water on January 26.  (*Id.* at 30-31.)  When Defendant Conley came to work at Riverside on January 28, she continued Defendant Blankstrom's efforts to contact people and have Vaughn transferred to a cooler cell until Vaughn was moved to a cooler room in 11 building around 4:30 p.m.  (Incident Report, Mar. 7, 2002 Supp. at 7.)  Although Defendant Conley's continued efforts to assist Vaughn resulted in his transfer to a cooler cell, Defendant Conley also knew that Vaughn's vitals were "not normal," that he had vomited, that he was diaphoretic and needed to be evaluated by the treatment team.  (Conley Dep. at 46-47; Incident Report, Feb. 21, 2002 Supp. at 9.)  Since Defendant Conley did not ensure that Vaughn was properly evaluated, she may have been deliberately indifferent to Vaughn's medical needs.

The next question is whether Defendant Conley is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Conley is not entitled to summary judgment in light of the above record.

<u>o.  Debra Mills</u>

Defendant VanBeelen requested Defendant Mills examine Vaughn.  (VanBeelen Dep. at 80; Incident Report, Apr. 29, 2002 Supp. at 4.)  Defendant Mills testified that Vaughn was unresponsive - which she saw as defiant - and would not cooperate with a mental status check.  (Mills Dep. at 70-74.) Defendant Mills knew that Vaughn needed to be moved to a cooler cell with free access to water in the cell.  (*Id.* at 76-77.)  Defendant Mills monitored Vaughn's fluid intake and knew that he was not taking fluids.  (*Id.* at 86.)  The Incident Report indicates that Defendant Mills knew that Vaughn was not eating or drinking consistently and she "wondered" if he was dehydrated because 10 building was very hot.  (Incident Report, Apr. 29, 2002 Supp. at 4.)  Since Defendant Mills knew that Vaughn was in danger of being dehydrated and did not ensure that he received medical care, Defendant Mills may have been deliberately indifferent to the medical needs of Vaughn.

The next question is whether Defendant Mills is entitled to qualified immunity.  The Court has found that there is a genuine issue of material fact as to a possible violation of a clearly established constitutional right.  Defendant Mills is not entitled to summary judgment in light of the above record.

## B.  Count II: Gross Negligence

Traditionally, "a" proximate cause is the standard of the law of Michigan on the issue of proximate cause.  However, the Michigan Supreme Court in *Robinson v. City of Detroit*, 613 N.W.2d 307 (Mich. 2000), has ruled that in a given case, "the" is proper when there could be no other proximate cause - *i.e.,* "the" reason decedent died was because she was a passenger in a vehicle which the driver crashed into a non-police vehicle while attempting to flee the police.  Defendants here argue that, as governmental employees, each Defendant has governmental immunity under Michigan Compiled Laws § 691.1407.  (Dkt. No. 220 at 17l; Dkt. No. 221 at 17-19; Dkt. No. 223 at 12-13; Dkt.

No. 225 at 23; Dkt. No. 227 at 24-25.)  Citing to *Robinson*, Defendants further argue that, since it is impossible to tell who or what is "the" proximate cause of Decedent's death or alleged suffering, summary judgment should be granted in favor of Defendants.  *Id.  Robinson* held that "summary disposition...was proper because reasonable jurors could not find that the officers were the proximate cause of the injuries" suffered by plaintiff during a car chase, because plaintiff was the only cause of the injuries.  *Robinson*, 613 N.W.2d 319 (internal citation omitted).  The case at bar is distinguishable because, based on the record, a reasonable jury could find each or all of the remaining Defendants grossly negligent and that he or they were "a" proximate (or even "the") cause of Decedent's death.[5]

As previously indicated, the Court determines that summary judgment is warranted as to Defendants Blankstrom and House.  The Court further determines that summary judgment is unwarranted as to the remaining Defendants because there exist genuine issues of material fact, including but not limited to whether each or all of the remaining Defendants were "grossly negligent" in failing to obtain medical attention for Decedent and proximately caused his death.  Defendants have failed to specify portions of the record identifying a "most immediate cause" of the death, other than their own conduct.

C.  Count II:  Intentional Infliction of Emotional Distress

In order to establish a prima facie case of intentional infliction of emotion distress ("IIED"), a plaintiff must prove: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress."  *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 464 (6th Cir. 2001) (citing *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998)).  Michigan law does not

---

[5]Another basis for distinguishing *Robinson* is that the instant case may be a case where one or more Defendants inflicted independently actionable injuries, *i.e.*, separate torts.

permit recovery when "mere insults, indignities ... or other trivialities" occur as there "is no occasion for the law to intervene in every case where some one's feelings are hurt." *Ruffin-Steinback*, 267 F.3d at 464 (citing *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (1985)).  Additionally, M.C.L. § 691.1407 does not generally protect state employees from intentional torts such as IIED.  *See Walsh v. Taylor*, 689 N.W.2d 506 (Mich. 2004).

Defendants Mangiapani, Conley, Mills, Buss, Croll, Smith, Slocum-Taylor, VanBeelen, Weathers, Morris, Foster, House, Parker, Cieply, Stevens and Blankstrom move for summary judgment as to Plaintiff's claims of intentional infliction of emotional distress.  (Dkt. No. 227 at 25; Dkt. No. 221 at 20-21; Dkt. No. 220 at 19-21; Dkt. No. 223 at 14-15; Dkt. No. 225 at 23.)  Said Defendants argue that the Court should not exercise supplemental jurisdiction over unsettled state law.  *Id.*  However, this Court is not barred from exercising supplemental jurisdiction simply because the Michigan Supreme Court has not yet ruled on this issue.  When the Michigan Supreme Court has yet to decide an issue of state law, the Court shall follow the precedent set forth by the Michigan Court of Appeals. *See Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 433 (6th Cir. 2004) ("If the state supreme court has spoken on the issue, its decision should be followed; if, however, the only precedent is from the state's intermediate appellate courts, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner." (citing *Lawler v. Fireman's Fund Ins. Co.*, 322 F.3d 900, 903 (6th Cir. 2003))); *see also Mroz v. Lee*, 5 F.3d 1016, 1020 (6th Cir. 1993) (finding that Michigan law permits claims for intentional infliction of emotional distress); *Ross v. Burns*, 612 F.2d 271 (6th Cir. 1980) (recognizing claim for intentional infliction of emotional distress in light of decisions of the Michigan Court of Appeals).  Defendants Buss, Croll, Smith, Slocum-Taylor, VanBeelen, Weathers, Morris, Foster, House, Parker, Cieply, Stevens and

Blankstrom further argue that, even if the Court recognizes the state law claim of intentional infliction of emotional distress, Plaintiff has failed to show a sufficient factual basis to support a claim of intentional infliction of emotional distress.  Upon review of the record, the Court agrees as to Defendants House and Blankstrom.  However, there are facts which, if proven, could lead a trier of fact to reasonably find in favor of the intentional infliction of emotional distress claim as to Defendants Mangiapani, Conley, Mills, Buss, Croll, Smith, Slocum-Taylor, VanBeelen, Weathers, Morris, Foster, Parker, Cieply, and Stevens.

### D.  Count III: Medical Malpractice and Professional Negligence

The Michigan statute governing medical malpractice is M.C.L. § 600.2912.  Defendants Blankstrom, Croll and Stevens assert that Count III of Plaintiff's claims should be dismissed for failing to comply with the written notice requirement set forth in § 600.2912b and the affidavit requirement set forth in § 600.2912d.  (Blankstrom Br., Dkt. No. 225 at 20-21; Croll Br., Dkt. No. 221 at 22; Stevens Br., Dkt. No. 223 at 15-16.)

Michigan Compiled Laws Section 600.2912b states that a plaintiff shall not commence an action alleging medical malpractice unless the plaintiff gives defendants written notice not less than 182 days before the action is commenced.  § 600.2912b(1).  The defendant is to furnish a written response within 154 days after receipt of the plaintiff's notice.  § 600.2912b(7).  If plaintiff does not receive the written response from defendant, the plaintiff may commence a medical malpractice action upon the expiration of the 154-day period.  Dismissal is an appropriate remedy for noncompliance with the statutory notice requirement.  *See Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424, 425 (Mich. 2005).

Plaintiff submitted "Notice of Intent to File a Claim Alleging Medical Malpractice" on October 13, 2003. (Blankstrom Br., Ex. 10.) Upon review the Court determines that the submitted notice meets the requirements set forth by § 600.2912b(4). The notice sufficiently sets forth the applicable standard of care, the manner of the alleged breaches, the actions which Defendants should have taken and the manner in which the breaches were the proximate cause of Vaughn's injuries. This case is distinguishable from *Roberts v. Mecosta County Hosp.*, 684 N.W.2d 711 (Mich. 2004), because the plaintiff in *Roberts* "stated, in essence: 'Defendants breached the standard of care by breaching the standard of care.'" *Id.* at 721. In the case at bar, Plaintiff, although in a generalized manner, does set forth a "good-faith averment of *some* particularized standard for each of the professionals and facilities named in the notices." *Id.* at 720.

Along with the complaint, the plaintiff in a medical malpractice action must file an affidavit of merit as set forth in § 600.2912d and signed by a health professional who meets the requirements for an expert witness. Filing of the complaint without the affidavit does not commence the lawsuit or toll the limitations period. *See Scarsella v. Pollak*, 591 N.W.2d 257 (Mich. Ct. App. 1998). Defendants Blankstrom and Croll assert that the Affidavit of Merit of Janet McCoig is deficient for failing to distinguish between Defendants and fails to comply with M.C.L. § 600.2102(4). (Dkt. No. 225 at 20.) Defendant Stevens asserts that the affidavit of Robert Klotz is deficient for failing to distinguish between individual Defendants. (Dkt. No. 223 at 17.) Upon review, the Court determines that both affidavits are sufficient to meet the requirements of § 600.2912d. Additionally, the Court determines that McCoig's affidavit has substantially complied with the requirements set forth in M.C.L. § 600.2102(4), and although there may be procedural non-compliance, it does not appear to be significant.

For those reasons, Defendants Motions for Summary Judgment as to Count III of Plaintiff's Third Amended Complaint will be denied.

E.  State Law Claims: Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3) and *United Mine Worksers v. Gibbs*, 383 U.S. 715, 726-27 (1966), Defendants also request the Court dismiss Plaintiff's state law claims if Plaintiff's federal claims are dismissed.  (Dkt. No. 217 at 24-25; Dkt. No. 220 at 15-16; Dkt. No. 221 at 16; Dkt. No. 227 at 25-26.)  Count III of Plaintiff's Third Amended Complaint shall not be dismissed as to Defendant Blankstrom even though Counts I and II will be dismissed for the previously stated reasons.  The Court will retain jurisdiction over the remaining claim against Defendant Blankstrom because of Plaintiff's outstanding state law claims against the other Defendants in this action.  It would be a waste of judicial resources to require a separate state trial to be held to determine Count III solely as to Defendant Blankstrom.  The Court will retain jurisdiction over Plaintiff's state law claim as to all other named Defendants since the federal claims against them have not been dismissed**.**

IV.    **Conclusion**

For the reasons stated, the Court finds that Defendants House and Blankstrom are entitled to summary judgment as to Counts I and II of the Third Amended Complaint, but summary judgment is not proper for the other Defendants.  Additionally, the Court will not dismiss Count III of Plaintiff's Third Amended Complaint against any Defendant, including Defendant Blankstrom.

A Partial Judgment consistent with this Opinion will be entered.

                                            /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:              RICHARD ALAN ENSLEN
       August 4, 2005               UNITED STATES DISTRICT JUDGE