UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINETTE GIBSON,

           Plaintiff,

v.

DAVID MOSKOWITZ, M.D.,

           Defendant.
_____/

CASE NO. 03-00053

HON. MARIANNE O. BATTANI

**AMENDED OPINION AND ORDER ALLOCATING DAMAGES AWARD**

This matter is before the Court after remand by the Sixth Circuit Court of Appeals for an allocation of compensatory damages. The Court has reviewed the pleadings and, for the reasons that follow, awards Plaintiff $825,000 in compensatory damages for Defendant's deliberate indifference and $675,000 in compensatory damages for Defendant's medical malpractice.

**I. STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff Antoinette Gibson is the representative of the estate of Ozy Vaughn, who was incarcerated at the Riverside Correctional Facility in Ionia, Michigan at the time of the events giving rise to this litigation. Defendant Dr. David Moskowitz, a psychiatrist employed by the Michigan Department of Corrections, treated Vaughn during the time preceding his death from dehydration. Gibson's claims of malpractice and deliberate indifference to a serious medical need resulted in a jury verdict of $2 million in compensatory damages, which was reduced by $500,000 to reflect settlement with other defendants, and $3 million in punitive damages. Although the jury found against Defendant on both counts, it was

unable to apportion the compensatory damages between the two claims. The Court therefore allocated $683,500 to the medical malpractice claim and $816,500 to the deliberate indifference claim without explanation.

Defendant appealed, and on April 29, 2008, the Sixth Circuit Court of Appeals affirmed in part and reversed in part the compensatory damages award. See Gibson v. Moskowitz, Inc., 523 F.3d 657 (6th Cir. 2008). In reviewing the decision, the appellate court reviewed state law, which requires the presiding judge to apply a noneconomic damages cap in a medical malpractice action. The applicable cap in this case is $683,500. Here, the Court awarded that amount in medical malpractice damages and awarded the remaining portion of compensatory damages to the deliberate indifference claim. The case was remanded with instructions to allocate the damages and explain the basis for that allocation. Id. at 668. Accordingly, the Court's allocation and reasoning is articulated below.

## II. ANALYSIS

At the outset, the Court observes that because damages arising out of the two claims are the same in nature, it is difficult to make an allocation between them. The jury was asked to do this, but was unable to do so. Therefore, this Court must make the allocation. In doing so, there is a natural tendency is to split the amount equally, a reasonable resolution to a difficult problem. The Court declines to do so, however, because it concludes that the allocation should reflect the greater culpability required for a finding that Defendant acted with deliberate indifference to Vaughn's serious medical needs than the negligence needed to establish the malpractice claim.

Specifically, the Court holds that the finding of deliberate indifference demands

greater relief than the malpractice finding. As the appellate court noted in its opinion, the "deliberate-indifference standard requires the plaintiff to prove more in the way of culpability than the medical-malpractice standard requires the plaintiff to prove." Here, the jury found Plaintiff met her burden to show the heightened culpability required to prove deliberate indifference, and the record supports its conclusion. The following facts reflect the blatant indifference of Dr. Moskowitz to Vaughn's medical condition.

Under Dr. Moskowitz's watch, Vaughan lost 40 pounds over the course of four days while being held in an observation room in which the temperature reached 96 degrees. There is no question that Vaughn's condition became progressively worse and his pain and suffering increased exponentially. Specifically, the medical testimony demonstrated that the process of dehydration went from mild to moderate to severe to life-threatening to life-terminating. The testimony of medical experts at trial was that Vaughn's medication in combination with the high temperature in the observation room created a serious condition from the start given the drugs proscribed to treat Vaughn also "affect the part of the brain that regulates temperature." Gibson, (quoting Joint Appendix at 998). Moskowitz admitted knowledge of these two factors.

Further, other prison officials noted Vaughn's worsening condition. His deterioration was charted and that information was available to Dr. Moskowitz. Eventually, a nurse brought her concern that Vaughn was suffering from severe dehydration directly to Dr. Moskowitz and asked that the doctor examine the prisoner. Dr. Moskowitz did and concluded the Vaughn's medication did not cause the problem. Id., (quoting Joint Appendix at 1562, 1567-68).

On the final day of Vaughn's life, Dr. Moskowitz declined to have a second face-to-

face contact with his patient. Even after the nurse, who testified that she feared for Vaughn's life, asked Dr. Moskowitz to reevaluate Vaughn, the Doctor took no action. According to the testimony he looked at Vaughn through a window and then went home. The medical experts in this case, believed Vaughn's conditions would have been obvious, shocking, and apparent. Further, the testimony indicated that the closer Vaughn came to death, the greater his pain and suffering. The testimony shows that Vaughn suffered significant pain and that up until 1:30 in the afternoon, it was life threatening and required hospitalization. Dr. Moskowitz, the only doctor to examine Vaughn that day, took no action, a decision that resulted in Vaughn's death. The damages attributed to this deliberate indifference must exceed those attributed to medical malpractice.

## III. CONCLUSION

For want of a more precise method, the Court assesses 55% of the damages for the deliberate indifference or $825,000 and $675,000 for the medical malpractice. This split reflects the Court's consideration of the trial testimony, the significant opportunity presented to Defendant to treat Vaughn's condition, and the jury's finding that Dr. Moskowitz was deliberately indifferent to Vaughn's serious medical need. The Court is well aware the medical malpractice cap is $683,000. Because the award is less that the cap, there is no need to adjust for it.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: August 15, 2008

## CERTIFICATE OF SERVICE

  Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

               <u>s/Bernadette M. Thebolt</u>
               Deputy Clerk